UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

    Plaintiff,

Case No. 24-20097
Hon. Thomas L. Ludington

vs.

**REMINGTON PECK-SKILLMAN**,

    Defendant.

---

## DEFENDANT'S SENTENCING MEMORANDUM

### Introduction

Mr. Peck-Skillman is 29 years old. He has pled guilty in accordance with a Rule 11 Plea Agreement to Possession of an Unregistered Destructive Device, contrary to 28 U.S.C. § 5861(d), 26 U.S.C. § 5871. He now faces a maximum period of imprisonment of up to 10 years, a fine of $250,000.00 and a term of supervised release of up to three years. *See*, ECF No. 18, PageID.43-44. In that agreement, the government has recommended that any sentence of imprisonment not exceed the midpoint of his guideline range. *See,* ECF No. 18, PageID.51 at ¶ 10.B.1. There is also agreement between the parties that the Court impose a two-year term of supervised release should this Court send Mr. Peck-Skillman to prison. *See*, ECF No. 18, PageID.52 at ¶ 10.C.1.

Sentencing is scheduled before this Court on September 18, 2024 at 3:00 p.m.

Mr. Peck-Skillman respectfully requests that after this Court evaluates the advisory guideline range and the sentencing factors mandated by 18 U.S.C. § 3553(a),

*et. seq.,* that this Court find that a sentence which is sufficient, but not greater than necessary to comply with the mandates of that section, is a period of probation and/or in the alternative, if the Court determines that a custodial sentence is appropriate, then either a halfway house, but a sentence which is no longer than 15 months. Further, should this Court find that a custodial sentence is appropriate, then that sentence be concurrent with Docket No: 24-00344-FH of the 10th Circuit Court, Saginaw, Michigan for his plea to Attempted Assault with a Dangerous Weapon, a two-year felony.

## Legal Principles

In *United States v. Booker* and *United States v. Fanfan*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the United States Supreme Court held that the mandatory imposition of the federal sentence guidelines is unconstitutional.

This results in this Court having the power to more broadly exercise its discretion and fashion an individualized sentence. *See, United States v. Chandler,* 419 F.3d 484 at 486-487 (6th Cir. 2005).

The first requirement of a legitimate criminal sentence is a process-driven one. The court must properly calculate the guideline range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence. *See, Gall v. United States,* 552 U.S. 38 (2007). *See, United States v. Rayyan,* 885 F.3d 436, 442 (6th Cir. 2018).

"A sentence is substantively unreasonable is a sentence which is too long . . . " *See, United States v. Rayyan,* 885 F.3d 436, 442 (6th Cir. 2018). A sentence is too long,

when it is "greater than necessary" to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)(2). *See, United States v. Lee*, 974 F.3d 670 (2020) at 676.

**Applicable Guideline Range**

The Probation Department has determined that based upon a total offense level of 17 and a criminal history category of II, Mr. Peck-Skillman's advisory guideline range is 27–33 months.[1]

**Application of the 18 U.S.C. § 3553(a) Factors**

Title 18 U.S.C. §3553(a) provides that this Court must impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in (2) of this subsection. In analyzing a particular sentence to be imposed, the Court must consider the following factors which will be analyzed seriatim.

**The nature and circumstances of the offense and the history and characteristics of the defendant**

The nature and circumstances of the offense that Mr. Peck-Skillman has pled guilty to are serious. They involve Possession of an Unregistered Destructive Device (a bomb). It is unlawful to possess such a device unless it was registered. It was not. It was located in his car upon his arrest for outstanding warrants. Mr. Peck-Skillman

---

[1] At the time of the disclosure of the initial Presentence Investigation Report dated August 6, 2024, Mr. Peck-Skillman's criminal history category was I. Subsequently, on August 9, 2024, he pled guilty to Attempted Assault with a Dangerous Weapon in the 10th Circuit Court, Saginaw, Michigan, Docket No: 24-00344-FH. This resulted in an increase of the criminal history to a category II, resulting in the guideline range of 27–33 months. *See*, ECF No. 26, PageID.148 at 80.

recognizes the seriousness of this offense. He understands he can no longer behave, nor create those items.

As the Probation Department has determined prior to the 2023, Mr. Peck-Skillman led a law abiding life. He graduated from high school and had a consistent work history. But it appears that the trauma that was inflicted upon Mr. Peck-Skillman led to a decomposition and the use of drugs.[2]

That trauma consisted of health issues related to diabetes which his father was afflicted with. It resulted in his father's death at age 16. That resulted in his mother being the primary source of income, assisted by his grandparents who are supportive.

At the age of 23, he attended a birthday party with his brother. His brother's friend was playing with a shotgun, pointed it at his brother, and his brother was killed in front of him. At the same time, the friend that killed his brother, saw what happened and committed suicide with the same weapon. He has had flashbacks of these incidents and they continue to trouble him.

At the age of 25, he began a relationship with Mr. Register. It resulted in the birth of a child. She is now 2. Her name is Riley Lynn Peck. However, their relationship was on and off, which ended at the time of his arrest. This resulted in a "rocky" relationship with both Ms. Register, his mother and his grandparents. He wanted to see them on his terms. The family believed he was suffering from a drug addiction. His behavior became erratic and scared the family. As a result, Ms.

---

[2] See attached character references from his mother and brother, news article of their house fire and his brother's death.

Register, as well as his mother, brother and grandparents took out Personal Protection Orders against him. These orders also interfered with his ability to see his daughter. All of his arrests and subsequent plea in state court for Attempted Assault with a Dangerous Weapon and his plea to this Court, were results of that behavior. He understands and knows that he must conquer whatever addiction he has. That he has to deal with the fallout from the trauma that he has endured and find a way to behave the way he did prior to his involvement in the legal system. He is going to do that. He understands his failure to do so will continue to strain his family relationships and make it more difficult to see the person he loves the most, i.e., his daughter.

**To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

The instant offense that Mr. Peck-Skillman committed is serious. He had an unregistered device which might be considered a bomb. Based on the circumstances involving his family, his former significant other and his child, they became afraid. The substance he took and used were highly addictive and fueled this behavior. Basically he was living in his car and had all his belongings there.

The sentence requested, i.e., a sentence of probation, a halfway house, and/or in the alternative, no more than 15 months, does promote respect for the law. It also provides just punishment based on his set of circumstances.

Currently, he has been in custody since January 26, 2024 as a result of his arrest, which led to his plea of Attempted Assault with a Dangerous Weapon in the 10th Circuit Court. The plea he has entered in that case occurred on August 19, 2023, with a

sentence date of September 11, 2024. An unspecified term of probation will be imposed at his sentencing date on September 11, 2024. *See,* ECF No. 26, PageID.139 at ¶ 39.

Mr. Peck-Skillman has never been incarcerated before. He has been since January 2024. Once he is sentenced in state court, he will have served approximately nine months in state custody. A sentence on this offense to either probation, and/or a halfway house, and/or a prison sentence of less than 15 months, does show the world that no matter what you do, should you not behave in accordance with law, you will be punished. Should Mr. Peck-Skillman not comply with a probation term, halfway house conditions and/or supervised release. Any violation will result in further punishment. The system is truly punishing Mr. Peck-Skillman for his behavior.

### To afford adequate deterrence to criminal conduct to protect the public from further crimes of defendant

Again, Mr. Peck-Skillman has never faced a substantial period of the loss of his freedom. He has done so since January of 2024. A probationary term and/or a halfway house sentence, and/or a sentence of no more than 15 months, does adequately protect the public and deter his conduct. It sends a message to others that this behavior results in punitive actions even when placed on probation. Your freedom is seriously restricted. As stated in *United States v. Hubel*, 625 F. Supp. 2d 845 (2008) at 851:

> "With respect to the type of sentence imposed, the Supreme Court recognizes that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. *Gall*, 552 U.S. at ___, 128 S. Ct. at 595. Nevertheless, offenders on probation are subject to several substantial restrictions on their liberty, including provisions requiring that they may not leave the judicial district, move, or change jobs without

notifying their probation officer or the court, that they report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, refrain from excessive drinking, and submit to drug testing. *Id.* A sentence of probation rather than incarceration can work to promote the sentencing goal of respect for the law by illustrating a rejection of the view that the law is merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing. *Gall*, 128 S. Ct. at 599.

**To provide the defendant with needed education or vocational training, medical care or other correctional treatment in the most effective manner**

Though Mr. Peck-Skillman is physically healthy other than the injuries suffered to his hands which will require surgery, he does require mental health treatment. He must have this to deal with the trauma that he has been afflicted with. He also needs to address his substance abuse issues.

**The kinds of sentences of available**

There is no mandatory minimum required. The Court can place Mr. Peck-Skillman on probation. The Court can monitor Mr. Peck-Skillman as the 10th Circuit Court will be doing when he is released from state custody. As the Probation Department has noted, absent a departure or variance, a custodial sentence of 27–33 months is available.

**The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct**

There are no co-defendants in this case or related cases. It appears from the It appears from the Sentencing Commission that the average length of imprisonment imposed was 24 months, with a medium length of 23 months.

## Conclusion

As a result of the foregoing, Mr. Peck-Skillman respectfully requests that this Court impose a sentence of probation, if the Court is inclined not to do so, then a period of time in a halfway house, and/or in the alterative, a custodial sentence of no more than 15 months, with a term of supervised release of two years as recommended by the parties.

Respectfully submitted,

/s/Jerome Sabbota
RIBITWER & SABBOTA, LLP
26862 Woodward Avenue, Unit 200
Royal Oak, Michigan 48067
(248) 543-8000
contact@ribitwersabbota.com
P25892

DATED:  September 12, 2024

## **CERTIFICATE OF SERVICE**

    I hereby certify that on September 12, 2024, I electronically filed the foregoing document with the Clerk of the Court, using the ECF system, which will send notification of such filing to the Assistant United States Attorney.

/s/Jerome Sabbota  
RIBITWER & SABBOTA, LLP  
26862 Woodward Avenue, Unit 200  
Royal Oak, Michigan 48067  
(248) 543-8000  
contact@ribitwersabbota.com  
P25892

August 30, 2024

The Honorable Thomas L. Ludington
United States Post Office Building
1000 Washington Ave., Room 214
Bay City, Michigan 48708
Mailing Address: P.O. Box 216
Bay City, Michigan 48707

Dear Judge Ludington,

I am writing this letter on behalf of my oldest son, Remington Peck-Skillman, as he comes up for sentencing in your courtroom. I apologize for sending this so late. It really took a lot of thought to decide what I needed to say.

I have enclosed copies of articles about significant events in Remington's life, including his father's death in 2011 and the house fire we had three weeks later. I have also enclosed another article about his brother's death in 2018, at which Remington was sitting beside his brother when the death occurred.

With these, I have also sent some of Remington's school work. This is to show his thought process before he had these life changing experiences. There is also a letter to his grandmother with thoughts he has for the future.

Remington used to be a different person, as we all were. This family has been through a lot. I am very happy that the personal protective order requested last year will be expiring on October 16, 2024. I look forward to seeing and spending time with my son. As a mother of an incarcerated son, this is a path I have never traveled before, and it has been difficult to navigate for me.

I believe that many of the things that have led to this are based on the trauma he has experienced throughout his life. I believe this is what has led to his drug use that has escalated his behavior.

It is my deepest desire that my son can be reunited with his family, but also that he receive therapy and drug rehabilitation services.

When his daughter Riley was born, he was an excellent father with plans for her future. I believe he can be that father again. For that to happen, he needs to be available to be reunited with his family. That is why I ask you to consider this while choosing his sentence.

I will do what I can to help him throughout this process, and I believe he is sincere in wanting to make a positive change in his life so that he can be the father he needs to be once again. We all know it is going to take much work and support, and we plan to be there for him.

Sincerely,

*Wanda Skillman*

Wanda Skillman

989-326-0724

O'Ryan Skillman
1839 wood st
Saginaw mi 48602

9/8/24

 I'm going to start this off by saying I have never been good with words or writing, I've only ever been good with numbers but I will try my best to make this all make since to you so my apologies if this is confusing but anyways,

 I'm writing you in regards to my oldest brother Remington peck-Skillman he asked if I would come up with something to write to you about his character and who he is as a person.

 Remington and I grew up in Brant township with my other brother Richard Skillman ,father Byron Skillman and mother Wanda Skillman, we grew up slowly watching our father lose his battle to various diseases in 2011, then shortly after his death we lost our house and everything we had we went a wealthy family but our parents and grandparents made sure we had everything we needed to succeed in life. A couple years after that Remington was playing with fireworks and had one go off in his hand causing him to lose the tips of 3 of his fingers and the tip to his thumb. Then years latter at a party Remington Richard and I where attending the most unbelievable incident happened and a gun accidentally went off hitting and killing my brother richard while we where trying to save Richard from his gun shoot wound to then center of his chest Zach who was holding the gun when it went off walked out and took his life for what he just did, we where all so busy taking care of Richard we didn't even hear the gunshot, then roughly 2 years ago our cousin Jacob took his own life because of mental health issues, the only reason I mention all of this is to give a little background into the kind of life we have faced and the turamas that we had in our life. I truly believe that these events   Shaped Remington and caused him to burry most of his traumas deep inside of him causing mental health issues from storing all that pain and surfing inside of him you can tell when he is having harder days then otheres but i believe he is genuinely a good person he just has a lot of traumas in him that are set off by certain things that need resolved thru counseling.

 Remington is a hard working member of society as well, don't let the last few months before he got locked up define who he is they where extremely difficult for him because he was struggling finding a job in this outrageous economy but before that he was a hard worker working many many long hours as a directional driller and before that working with me as a maintenance laborer for crop production services, until i went back to my old company he counted working there until he moved on to a painting company with his friend that thrived at first but it being hard to find work so he became unemployed. But he still searched for a job

 The morel of the story I'm trying to say is Remington has been a amazing brother teaching me many many things and life lessons growing up and I think right now in his time of need he

needs support from his family like me and my mother and grandparents because in every way we failed him and wernt there for him in his time of need.

Thank you for reading
-O'Ryan Skillman

SAGINAW

# Marion Township brothers lose dad to illness, and now their home to fire; church aims to help

Updated: Mar. 09, 2011, 2:59 a.m. | Published: Mar. 09, 2011, 1:59 a.m.

By Tom Gilchrist | The Saginaw News

MARION TWP. — Less than three weeks ago, Byron S. "Ozzy" Skillman died, leaving behind his wife, Wanda, and their three teenage sons. On Tuesday afternoon here, the family's mobile home burned down.

"I'm trying to remind myself that it could be worse," said Wanda Skillman, 44, owner of the mobile home at 19030 W. Burt, at Steel, destroyed by fire about 12:30 p.m.

7

Ozzy Skillman, 45, her husband and father of the couple's three sons, died Feb. 18 of a heart attack brought on by kidney failure related to diabetes, Wanda Skillman said. She said the mobile home that caught fire Tuesday was uninsured.

"It's a tough situation for them," said Marion Township Fire Chief Victor A. Weigold, who noted the fire began accidentally when Skillman used a butane torch inside the home. She said she was making glass beads at the time.

Her sons — 16-year-old Remington Peck-Skillman, 15-year-old Cody Skillman and 14-year-old O'Ryan Skillman — were at class in Merrill Community Schools at the time of the fire.

"Upon arrival the home was fully engulfed in flames, so there wasn't too much to save," Weigold said.

Weigold said his department was assisted by firefighters from the Tri-Township, Jonesfield-Lakefield, Chesaning-Brady and Ashley departments.

Skillman said the fire also damaged one side of her minivan and she's not sure if it still runs, as her key was lost in the fire.

8

"I had just bought a new washer and dryer and refrigerator last week, and everything is just gone," she said. "Even if we get an apartment to live in, we're going to need all appliances."

The Skillman family "pretty much lost everything" in the fire, said Florence Boulis, Wanda's aunt, of Gratiot County's Elba Township.

While the boys need clothes and shoes, and the family could use appliances and furniture at some point, Skillman wonders if there's a way to remain at the spot where the fire broke out.

"We need a place to live," she said. "We have a septic system there and if we could find a used trailer or modular home and move it to that spot, that would be helpful."

The three boys attend the East Washington United Brethren Church, 8051 S. Crapo at M-57 in Gratiot County's Washington Township, Boulis said.

Church members have placed the family on a prayer chain "and that'll be their biggest help," said Boulis, a member of the chain.

Skillman and Boulis said anyone wishing to give money or clothes to help the family may bring donations to the church, which will forward the items to the family. Skillman also said anyone wanting more information may e-mail her at: wanda.skillman@yahoo.com.

9

The family needs boys' shoes in sizes 18, 12 and 15-wide. They also seek boys' pants in the following sizes: 50 waist/30 length; 38 waist/34 length; and 44 waist/36 length. They seek boys' shirts in sizes of extra large, quadruple-X and triple-X.

10

SAGINAW

# Merrill man kills self after realizing he killed his friend, police say

Published: Jan. 22, 2018, 5:10 p.m.



Bavarian Haus Apartments, 246 S. Johnson Street. (Google Maps)

By Bob Johnson | Bob_Johnson@mlive.com

MERRILL, MI -- The second person who suffered gunshot wounds in a Merrill shooting has died, according to the Saginaw County Sheriff's Office.

Zachary Woodcock, 21, died from a self-inflicted gunshot wound on Sunday, Jan. 22, according to Lt. Mike Gomez.

According to Gomez, Woodcock had invited some friends over for a birthday party on Friday, Jan. 19.

At some point during the gathering, Woodcock produced a gun and accidentally fired it, hitting 21-year-old Richard Cody Skillman in the chest, Gomez said.

12

Skillman died at the scene.

After realizing what he had done, Woodcock went outside and turned the gun on himself, Gomez said.

Woodcock was transported to the hospital and died over the weekend.

The incident occurred before 10 p.m. Friday at the Bavarian Haus Apartments, 246 S. Johnson Street, in Merrill.

13